**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 26-219-DLB**

**DALILA DORIBEL MARROQUIN**                                          **PETITIONER**

**v.**                          **MEMORANDUM ORDER AND OPINION**

**KRISTI NOEM, et al.**                                               **RESPONDENTS**

\* \* \* \* \* \* \* \* \* \*

## I.      INTRODUCTION

This matter is before the Court on Petitioner Dalila Doribel Marroquin's Petition for Writ of Habeas Corpus (Doc. # 1).  For the following reasons, the Court will **deny** the Petition.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a Guatemalan citizen who entered the United States without inspection more than twenty years ago.  *Marroquin v. Noem*, No. 26-45-DLB, 2026 WL 575222, at \*1 (E.D. Ky. Mar. 2, 2026).[1]  Marroquin has remained in the United States continuously since this initial entry.  *Id*.  Prior to her present detention, Marroquin resided in Corydon, Indiana with her three sons, each of whom is a U.S. citizen.  *Id*.  In late 2025, Marroquin was cited and charged in Indiana for operating a motor vehicle without a license.  *Id*.  Around this time, she was cited in Indiana and Kentucky for additional driver's

---

[1]      On February 4, 2026, Petitioner Dalila Doribel Marroquin filed a Petition for Writ of Habeas Corpus before this Court.  (Doc. # 1 ¶ 5).  The Court denied that Petition on March 2, 2026.  *See Marroquin*, 2026 WL 575222, at \*5. The following facts are summarized from this Court's Memorandum Opinion and Order in that case.

license-related offenses. *Id.* Shortly thereafter, ICE detained Marroquin and transferred her to the Campbell County Detention Center in Newport, Kentucky. *Id.*

After her arrest, DHS served Marroquin with a Notice to Appear for removal proceedings pursuant to the Immigration and Nationality Act ("INA"). *Id.* Marroquin was represented by counsel in these removal proceedings and was not subject to a final removal order. *Id.* Shortly after her initial detention, Marroquin requested and received a bond redetermination hearing before an Immigration Judge ("IJ"). *Id.* In support of her request for bond, Marroquin offered "extensive evidence, including the real estate contract for the family home, the children's birth certificates, the youngest child's IEP and education records, a detailed letter from her oldest son describing her character and their dependence on her, and her recent tax returns and employment records." *Id.* (internal quotations omitted). Marroquin argued that she did not pose a danger to the community and that she did not present a flight risk. *Id.* However, after considering this evidence, the IJ denied Marroquin's request for bond. *Id.* The IJ initially stated that he lacked authority to hear a bond request in light of the Board of Immigration Appeals' ("BIA") decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). But the IJ alternatively concluded that, "[s]hould a reviewing body find that [the IJ] has authority to hear this bond, the Court finds that [Marroquin] is a danger and, in the alternative, a flight risk." *Id.* (internal quotations omitted). Marroquin opted not to appeal the IJ's decision. *Id.*

Instead, on February 4, 2026, Marroquin filed her first Petition for Writ of Habeas Corpus. *Id.* at *2. In her Petition, Marroquin argued that she was being wrongfully detained at the Campbell County Detention Center and requested that the Court order

2

her immediate release or, alternatively, a bond hearing before an IJ pursuant to 8 U.S.C. § 1226(a).  *Id*.  On March 2, 2026, this Court denied that Petition, concluding that Petitioner "challenge[d] a discretionary application of § 1226(a) and fail[ed] to raise a cognizable challenge to the underlying statutory framework or the extent of the Government's detention authority" and therefore § 1226(e) precluded this Court's review. *Id*. at *5.

On May 14, 2026, Marroquin filed the instant Petition before this Court (Doc. # 1). In her Petition she states that "intervening controlling authority [] materially changes the governing legal framework and supplies a new basis for relief from [her] ongoing detention."  (Doc. # 1 ¶ 5).

## III.   ANALYSIS

### A. Marroquin's Prior Petition

In addressing Marroquin's previous Petition, the Court noted that "aliens who, like Marroquin, entered the United States without inspection and remained present for years prior to an arrest by ICE are subject to the discretionary detention scheme established by 8 U.S.C. § 1226 and not the mandatory detention required by 8 U.S.C. § 1225(b)(2)." *Marroquin*, 2026 WL 575222, at *2.  However, the Court opined, "Marroquin's detention differ[ed] in a crucial respect—she ha[d] already received a bond hearing."  *Id*.  Because Marroquin had already received a bond hearing, the Court was required to "determine whether it ha[d] jurisdiction to consider Marroquin's claims."  *Id*.

The Court remarked that it would only be able to consider her Petition "insofar as it challenges the extent of the Government's detention authority under the INA's framework."  *Id*. at *3 (citing *Nielsen v. Preap*, 586 U.S. 392, 401 (2019)).  While Marroquin, at times, "couche[d] her Petition in the language of a statutory or constitutional

3

critique" the Court concluded that her "Petition ultimately [took] issue with the IJ's discretionary decision to deny bond." *Id*. at *4. In coming to this conclusion, the Court noted that

> The IJ's decision states that he fully considered the evidence presented prior to reaching his decision. Marroquin does not dispute this fact. She does not allege that the IJ wholly failed to consider the evidence she offered or that the hearing was procedurally improper. Instead, she argues that the IJ erred in weighing the evidence. Thus, her Petition raises quintessentially factual arguments about the IJ's decision. And factual challenges to an act of administrative discretion fall outside the bounds of the Court's jurisdiction.

*Id*. Accordingly, the Court reasoned that because "Marroquin's Petition [did] not challenge the INA's statutory framework or the extent of the Government's detention authority" the Court was precluded by 1226(e) to review the IJ's decision. *Id*.

### B. Marroquin's Instant Petition

Marroquin argues that the instant Petition "is not a mere repetition of the earlier filing. It rests on a material change in controlling law after the earlier petition[.]" (Doc. # 1 ¶ 28). Petitioner is referring to *Lopez-Campos et al. v. Raycraft et al.*, the May 11, 2026 Sixth Circuit Court of Appeal decision wherein the Sixth Circuit determined that § 1226 is the properly applied statutory provision for detaining noncitizens who are not "seeking admission" into the United States. --- F.4th ---, 2026 WL 1283891, at *11 (6th Cir. May 11, 2026). In its opinion, the Sixth Circuit affirmed the judgments of four district courts below, determining that the "text, canons, and past practice" of two statutes all support the conclusion that the petitioners were not subject to the mandatory detention provisions of § 1225. *Id*. at *6. Accordingly, the Circuit rejected the government's position that § 1225 governs noncitizen detainees, concluding that "[t]o hold otherwise would subject

long-term law-abiding residents in the United States . . . to the hardship of mandatory detention without due process." *Id*. at *13.

Petitioner argues that pursuant to *Lopez-Campos*, "[s]he is entitled to custody review under the correct statutory framework[.]" (Doc. # 1 at 9). Specifically, Petitioner contends that the custody determination was not "grounded solely in the correct legal framework, because the Immigration Judge lacked authority to consider bond at all and only the made the alternative findings." (*Id*. at 10).

Petitioner is correct in that one of the reasons the IJ denied bond was because he did not believe the immigration court had jurisdiction over Petitioner. (Doc. # 1-2). However, as Petitioner herself has conceded, the IJ also made alternative findings, wherein he found that she was a danger and a flight risk. (*Id*.). Marroquin does not argue that she did not have access to a bond hearing. Nor could she. As this Court concluded in its previous Order, Petitioner had access to a bond hearing wherein the IJ considered all the evidence before him. *See Marroquin*, 2026 WL 575222, at *4. Thus, Petitioner's argument that she is entitled to a new bond hearing rests solely on the fact that the reasoning behind the IJ's denial of bond was two-fold: (1) because he believed the immigration court lacked jurisdiction; and (2) Petitioner was a danger and a flight risk. (*See* Doc. # 1 ¶ 27) (maintaining that she is entitled to a new bond hearing "[b]ecause the Immigration Judge's primary rationale for denying bond was that the Court lacked authority to hear bond requests from noncitizens present without admission.").

Here, the Court "is not persuaded, based on the arguments before it, that the IJ's decision was unlawful merely 'because it was handed down on an in-the-alternative basis.'" *Kumar v. Anda-Ybarra*, No. CIV-26-164-R, 2026 WL 753944, at *2 (W.D. Okla.

Mar. 17, 2026) (quoting *Chiquito Barzola v. Warden, Delaney Hall Det. Facility Newark NJ*, No. 2:25-cv-17326 (MEF), 2025 WL 3443487, at *2 (D.N.J. Dec. 1, 2025)).  In *Chiquito Barzola*, an IJ found that the immigration court lacked jurisdiction to release the petitioner pursuant to *Hurtado* but ruled in the alternative that the petitioner was not entitled to release because he posed a flight risk.  2025 WL 3443487, at *2.  In reviewing the petitioner's habeas petition, a court in the District of New Jersey concluded

> There is no reason to discount the Immigration Judge's risk-of-flight holding because it was handed down on an in-the-alternative basis.  In the alternative holdings are understood as providing, on their own, a sufficient foundation for a court's ruling. . . . Therefore, the Immigration Judge's in-the-alternative holding, that the Petitioner is a risk of flight, supplies an adequate basis for the Immigration Judge's determination that the Petitioner should remain detained.

> *Id*.

In *Kumar*, a court in the Western District of Oklahoma similarly concluded that it lacked the jurisdiction to reconsider the IJ's discretionary decision, despite that decision being handed down on an in-the-alternative basis.  2026 WL 753944, at *2.  Specifically, the court noted that the petitioner argued that the record evidence did not support the IJ's decision, yet he made no attempt to show that the decision was "somehow legally erroneous or unconstitutional."  *Id*.; *see also Singh v. Blanche*, No. CIV-26-311-D, 2026 WL 915596, at *9 (W.D. Okla. Apr. 3, 2026) ("The IJ's bond determination order states that a hearing was held and the IJ considered evidence. . . 'Petitioner does not indicate that he was denied the opportunity to present evidence at the bond hearing or that the IJ improperly shifted the burden of proof.'" (quoting *Kumar*, 2026 WL 753944, at * 2)); *Hernandez-Gabriel v. Tate*, No. H-25-5687, 2026 WL 161192, at *4 (S.D. Tex. Jan. 20,

6

2026) (finding that the court had "no jurisdiction to entertain" a petitioner's challenge of the immigration judge's order where the IJ denied bond in-the-alternative).

Accordingly, the Court finds that the decision to deny bond in-the-alternative is a lawful discretionary decision made by the IJ after a full consideration of the evidence.

### C. Jurisdiction

Marroquin's Petition does not challenge the INA's statutory framework or the extent of the Government's detention authority. *See Nielsen*, 586 U.S. at 401 (noting that § 1226(e) bars review of discretionary applications of § 1226); *Hernandez-Gabriel*, 2026 WL 161192, at *4 (holding that a district court lacked jurisdiction to consider a petitioner's challenge to the correctness of an IJ's determination that the petitioner posed a flight risk); *Perez Sierra v. Bondi*, No. 25-cv-18829, 2026 WL 497070, at *3 (D.N.J. Feb. 23, 2026) ("This Court lacks jurisdiction to review any discretionary determinations underlying an immigration judge's bond decision, but it can review whether the bond hearing was fundamentally unfair in violation of this Court's order."); *cf. Soto-Medina v. Lynch*, No. 1:25-cv-1704, 2026 WL 161002, at *2 (W.D. Mich. Jan. 21, 2026) (holding that § 1226(e) did not bar consideration of a petitioner's challenge that the discretionary process of § 1226(a) itself is unconstitutional). She does not claim that her bond hearing lacked necessary procedural safeguards or that the IJ did not have statutory authority to deny bond. Rather, Petitioner seeks immediate release, which would require this Court to review the IJ's discretionary decision to deny bond in-the-alternative because Petitioner is a danger and a flight risk. The Supreme Court has repeatedly recognized that § 1226(e) bars judicial review of such decisions. *See Nielsen*, 586 U.S. at 401; *Jennings*, 583 U.S. at 295; *Demore*, 538 U.S. at 516.

7

Because Petitioner challenges a discretionary application of § 1226(a) and fails to raise a cognizable challenge to the underlying statutory framework or the extent of the Government's detention authority, § 1226(e) precludes this Court's review.

## IV.    CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Marroquin's Petition for Writ of Habeas Corpus (Doc. # 1) is **DENIED.**

**IT IS FURTHER ORDERED** that this matter is hereby **DISMISSED** and **STRICKEN** from the Court's active docket.

This 28th day of May, 2026.



Signed By:

David L. Bunning

Chief United States District Judge

G:\Judge-DLB\DATA\ORDERS\Cov2026\26-219 MOO re Habeas.docx

8